[Cite as *Baker v. Manchi*, 2017-Ohio-730.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

PHYLLIS BAKER                              )
                                           )
        PLAINTIFF-APPELLEE                 )
                                           )        CASE NO. 15 MA 0091
VS.                                        )
                                           )        OPINION
JAMES MANCHI, et al.                       )
                                           )
        DEFENDANT-APPELLANT                )

CHARACTER OF PROCEEDINGS:        Civil Appeal from the Court of Common
                                 Pleas of Mahoning County, Ohio
                                 Case No. 2014 CV 582

JUDGMENT:                        Affirmed.

APPEARANCES:
For Plaintiff-Appellee           Attorney Kevin Murphy
                                 108 Main Avenue, S.W.
                                 Suite 500
                                 Warren, Ohio 44481

For Defendant-Appellant          Attorney Stuart Strasfeld
                                 100 East Federal Street
                                 Suite 600
                                 Youngstown, Ohio 44503

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                           Dated: February 28, 2017

DeGENARO, J.

{¶1} Defendants-Appellants, James Manchi, et al., appeal the trial court's judgment awarding Plaintiff-Appellee, Phyllis Baker, half of the proceeds from the sale of various companies in which she had an interest, and for refusing to consider his cross motion for summary judgment. As Manchi's arguments are meritless, the judgment of the trial court is affirmed.

### Facts and Procedural History

{¶2} Phyllis Baker's husband, Robert Baker, and Manchi, were lifelong business partners. Starting in the 1970's, they formed Federal Management Company, Inc., B&M Professional Services, Inc., Valley View I, LP, Valley View II, LP, and Austintown Associates, LLC, with Mr. Baker and Manchi each 50% shareholders and general partners of the companies.

{¶3} In 2007, Mr. Baker and Manchi entered into a Buy-Sell agreement to establish their respective rights and obligations in the event that one of them died or became incapacitated. The agreement provided in pertinent part: 1) it became irrevocably binding "upon the death or disability of any Stockholder;" 2) the surviving stockholder had thirty days to elect to purchase the surviving spouse's interest. In the event that the surviving stockholder elected not to purchase the surviving spouse's interest, he was then required to sell the companies; 3) the surviving spouse was to receive 40% of the distributions from the companies during the first year of the election trigger date, 50% during the second year, and 60% during the third year and thereafter until the companies were sold; and, 4) the surviving stockholder owes a fiduciary duty to the surviving spouse in the event of a sale of the companies.

{¶4} After Mr. Baker died in 2009, Manchi did not purchase Baker's interest, nor did he sell the companies. For the next three years, Manchi continued to operate the companies though Mrs. Baker made numerous requests that he sell them.

{¶5} In August 2012, Manchi unilaterally reduced Mrs. Baker's 60% distribution entitlement back to 50% despite the plain language of the Buy-Sell Agreement. As the companies still had not been sold, the parties agreed to a private mediation in December of 2012.

**{¶6}** In mediation the parties reached an agreement; in exchange for Baker reducing her 60% distribution to 50%, Manchi agreed to forgo a monthly management fee and list the companies for sale at $10 million. A minimum offer of $8 million was required to be accepted if one or more parties agreed. The agreement created an exception to the requirement that Manchi list the properties allowing him to purchase Baker's interest.

**{¶7}** In March 2013, Manchi sent Baker a formal purchase option agreement which permitted Manchi to list the properties for sale, get an offer from a third party and then exercise the right to buy out Baker's interest, which she refused to sign. On March 14, 2013, Manchi retained a broker to list the companies for sale. Within a few months, he received approximately a dozen letters of intent in the $9 to $10 million range. On May 17, 2013, Manchi received an offer of $10.3 million for the companies and on June 4, 2013, Manchi notified Baker he wanted to purchase her interest for $2.5 million and retain the balance of the sales proceeds. When the sale closed, Manchi and Baker each received $2.5 million as a partial distribution.

**{¶8}** The $1.8 million dollar balance from the sale was placed into an escrow account pending resolution of this matter. Manchi contended that pursuant to the mediation agreement Baker had received payment in full and that any remaining monies are his alone. Baker contended that the language of the Buy-Sell Agreement entitles her to half of the escrowed funds.

**{¶9}** Baker filed a complaint for declaratory judgment and Manchi filed an answer and counterclaim. Depositions were taken and Baker filed a motion for partial summary judgment. Manchi filed his own cross motion for partial summary judgment.

**{¶10}** The trial court granted summary judgment in favor of Baker finding that as a 50% general partner that she was entitled to 50% of the sale proceeds. The trial court determined that Manchi owed a fiduciary duty to Baker pursuant to the terms of the Buy-Sell Agreement, and Manchi's interpretation of the mediation agreement directly contradicted both agreements.

**Summary Judgment**

**{¶11}** In his first of four assignments of error, Manchi asserts:

The trial court erred in failing to consider Appellant's Cross Motion for Summary Judgment.

**{¶12}** The trial court set the dispositive motion deadline for March 1st. Baker filed a motion for partial summary judgment on February 27th, which was scheduled for hearing on April 6th. Although Manchi requested a continuance of the hearing and an extension to respond to Baker's motion—and the trial court granted both—he did not request leave to file his own motion for summary judgment. However, not only did Manchi filed his opposition brief, he also filed a cross motion for partial summary judgment.

**{¶13}** Civ.R. 56(A) and (B) provide that if an action has been set for pretrial or trial, parties may move for summary judgment only with leave of court. Absent an abuse of discretion, an appellate court will not reverse a trial court's decision to deny a motion for leave to file summary judgment. *Blatnik v. Avery Dennison Corp.*, 148 Ohio App.3d 494, 2002-Ohio-1682, 774 N.E.2d 282, ¶ 45 (11th Dist.) An abuse of discretion means the trial court's decision is unreasonable based upon the record; that the appellate court may have reached a different result is not enough to warrant reversal. *Downie v. Montgomery*, 7th Dist. No. 12 CO 43, 2013–Ohio–5552, ¶ 50; *Blatnik*, ¶ 45.

**{¶14}** Manchi attempts to confuse the issue by arguing that the trial court granting him an extension to file an opposition brief to Baker's motion inherently meant that he could file his own motion for summary judgment and provides no case law to support this argument. Manchi missed the deadline to file a motion for summary judgment and did not seek leave to do so. The trial court did not abuse its discretion in failing to consider a motion that was not properly before it. Accordingly, Manchi's first assignment of error is meritless.

**Buy-Sell Agreement**

**{¶15}** In his second of four assignments of error, Manchi asserts:

The trial court erred in failing to hold that the parties' Settlement Agreement supersedes the Buy-Sell Agreement.

**{¶16}** "[O]nce a trial court determines that a matter is appropriate for declaratory judgment, its holding regarding questions of law are reviewed on a de novo basis." *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13. If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. *Nationwide Mutual Fire Insurance Company v. Guman Brothers Farm*, 73 Ohio St.3d 107, 108, 1995-Ohio-214, 652 N.E.2d 684. Only in the event that a term of a contract is determined to be ambiguous will the matter be labeled as a question of fact. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37.

**{¶17}** Manchi argues that the parties' mediation agreement supersedes the Buy-Sell Agreement. Baker argues that the trial court was correct in holding that the Buy-Sell Agreement became irrevocably binding upon Mr. Baker's death. The Buy-Sell Argument contains the following provisions:

**Section 2. Term**: This agreement will be effective upon execution, and will remain in effect until modified, amended or terminated by mutual agreement of the parties in writing, however, that upon the death or disability of any Stockholder, this Agreement shall become irrevocably binding.

**Section 12. Remedies:** The Surviving Stockholder and the Surviving Spouse/Trustee/Estate will mediate any disputes that arise under this

Agreement or in regard to The Companies affairs. If mediation does not lead to resolution of the dispute, the parties will submit the dispute to arbitration. Such mediation and/or arbitration shall be conducted by and under the rules of such organization as the parties shall agree and shall be binding upon all involved. If the parties to the mediation and/or arbitration are unable to agree on a mediator or arbitrator, each party will select one person to act as such and the two mediators or arbitrators will then select a third person to act as the third mediator or arbitrator. NO PARTY CAN APPEAL THE DECISION OF THE ARBITRATOR.

**{¶18}** By its plain language the Buy-Sell Agreement became irrevocably binding when Mr. Baker died. However it also contemplated that there may be conflict between the surviving spouse and the surviving stockholder; as such, Section 12 provided for mediation.

**{¶19}** The parties engaged in mediation and reached an agreement which both Baker and Manchi signed. Manchi asks us to hold that the mediation agreement supersedes the Buy-Sell Agreement. However, the plain language of the mediation agreement does not support this notion; Section 6 states that "the Buy-Sell Agreement is also amended" which clearly indicates that the Buy-Sell Agreement remained in effect. More fundamentally, the mediation settlement was just that: a vehicle for the parties to resolve their dispute regarding the irrevocable terms of the Buy-Sell Agreement. And as borne out by this litigation, the issues were not resolved via mediation.

**{¶20}** The trial court correctly held that the Buy-Sell Agreement was irrevocably binding and the mediation agreement was not a superseding document. Accordingly, Manchi's second assignment of error is meritless.

### Mediation Agreement

**{¶21}** In his third of four assignments of error, Manchi asserts:

The trial court erred in failing to determine that the parties' Settlement Agreement included an unconditional and irrevocable option in favor of James P. Manchi.

**{¶22}** Within the mediation settlement are two relevant provisions:

3. The listings shall be for periods not to exceed 1 year and relisted consecutively with the same or different realtor upon same terms. Listing Agreement shall have exception for Manchi's option set forth in #8.

8. Manchi has option to purchase all of Baker's interests in the companies for 2.5M for 1 year from 1/1/13 and for 2.75M from 1/1/14 through 6/30/14.

**{¶23}** Manchi erroneously argues that he exercised his option "months prior to reaching an agreement to sell the apartment complexes" and that there were no limits placed on him regarding selling the properties after expressing his intent to purchase Baker's interest.

**{¶24}** The Buy-Sell Agreement not only placed limits on Manchi, it imposed upon him a fiduciary duty to Baker. Further, the plain language of the mediation agreement provided that Manchi's option to purchase was an exception; in the event Manchi exercised his option to purchase Baker's interest, the listing agreement terminated. As such, the trial court correctly held that Manchi could not simultaneously sell the companies and buy out Baker's interest. Accordingly, Manchi's third assignment of error is meritless.

### Fiduciary Duty

**{¶25}** In his final of four assignments of error, Manchi asserts:

The Trial Court erred in holding that Appellant breached fiduciary duties when Appellee made no such claim in her Complaint and presented no such argument in her Motion for Summary Judgment.

**{¶26}** Manchi argues that Baker has waived the fiduciary duty argument because it was not included in the complaint and motion for summary judgment. Baker argues that she filed a complaint for declaratory judgment and the duty was contractual as it was contained in the Buy-Sell Agreement. She further contends that she included the fiduciary duty argument in the motion for summary judgment.

**{¶27}** Baker attached a copy of the Buy-Sell Agreement to her declaratory judgment complaint in which she requested judgment "pursuant to the terms of the Buy-Sell Agreement." She specifically pled: "[t]he surviving stockholder shall have the primary and fiduciary responsibility to sell The Companies." Further, she specifically argued in her summary judgment motion that the Buy-Sell Agreement contained a provision that the surviving shareholder owes the surviving spouse a fiduciary duty. Thus, Baker did not waive this argument, and the trial court correctly held that the Buy-Sell Agreement imposed a fiduciary duty upon Manchi when he was selling the companies. Accordingly, Manchi's fourth assignment of error is meritless.

**{¶28}** As the trial court did not err in failing to consider Manchi's cross motion for summary judgment, nor err in awarding Baker half of the proceeds from the sale of the companies, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.